FILED

2014 Mar-20  AM 08:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY DOUGLAS FUQUA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:12-cv-03479-TMP |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I.      Introduction

The plaintiff, Anthony Douglas Fuqua, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB").  Mr. Fuqua timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) (doc. 12).

Mr. Fuqua was fifty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision (Tr. at 71), and is considered a "person of advanced age" according to 20 C.F.R. § 404.1563(e). He has a high school education, with three years of college training. (Tr. at 71). His past work experiences include employment as a machine operator, a hand packager of CDs, and a degreaser. (Tr. at 85). Mr. Fuqua claims that he became disabled on October 31, 2008, due to symptoms and limitations related to hypertension, obesity, and arthritic back problems. (Tr. at 24-25).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.150(a)(4)(I), 416.920(a)(4)(I). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision

depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation ends. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the

claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.  *Id.*  The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found disabled.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Mr. Fuqua meets the insured status requirements of the Social Security Act through December 31, 2013.  (Tr. at 24).  However, the ALJ also determined that Mr. Fuqua had not been under a disability as defined in the Social Security Act, from October 31, 2008, to the date of the ALJ's decision.  (Tr. at 31).  In reaching that finding, he first determined under step one of the analysis that Mr. Fuqua has not engaged in substantial gainful activity since October 31, 2008, the alleged onset date of his disability. (*Id.*)   At the second step of the sequential analysis, the ALJ found that Mr. Fuqua's hypertension is considered a "severe" impairment based on the requirements set forth in the regulations.  (*Id.*)  He further considered as "non-severe impairments" Mr. Fuqua's medically determinable obesity, costochondritis, and back pain/arthritis.  (Tr. at 25).  The ALJ noted that Mr. Fuqua alleged tingling

in his hands and feet; a "light" stroke; leg and arm numbness and weakness; and anxiety and nervousness.   (*Id.*)   However, the ALJ determined that these impairments are not medically determinable, and the alleged symptoms are not reasonably related to a medically determinable impairment.   (*Id.*)

At the third step of the analysis, the ALJ found that Mr. Fuqua's severe and non-severe impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  As such, the ALJ was required to determine Mr. Fuqua's RFC.   In doing so, he did not find Mr. Fuqua's allegations to be totally credible, and determined that Mr. Fuqua has the following residual functional capacity: medium exertional work as defined in 20 C.F.R. 404.1567(c) with limitations.   The ALJ determined that Mr. Fuqua is capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; is capable of sitting, standing, and walking for 6 hours each out of an 8-hour workday; is limited to walking at a normal pace; can never climb ladders, ropes, or scaffolds; and must avoid all exposure to workplace hazards. (Tr. at 25-26).

According to the ALJ, at step four of the analysis, Mr. Fuqua is able to perform his past relevant work as a hand packager and a machine operator because the work does not require the performance of any of the work-related activities

precluded in Mr. Fuqua's RFC.  (Tr. at 31).  A claimant who is able to perform his or her past relevant work will not be found disabled and, therefore, the ALJ is not required to proceed to the fifth step of the analysis.  Accordingly, the ALJ concluded his findings by stating that Mr. Fuqua "has not been under a disability, as defined in the Social Security Act, from October 31, 2008, through the date of this decision."  (*Id*.)

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a

question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Mr. Fuqua alleges that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded for two reasons. First, he believes that the ALJ failed to consider his "non-severe" impairments beyond the second step of the sequential evaluation process.  (Doc. 10 at 5).  In doing so, Mr. Fuqua argues that the ALJ failed to consider his arthritis of the back and obesity at all. (*Id*. at 6).   Second, Mr. Fuqua contends that the ALJ failed to consider his impairments' effect on his ability to work in combination with one another and, instead, ceased his evaluation at whether Mr. Fuqua's combined impairments met a medical listing. (*Id*.)

**A.      Did the ALJ Complete All Necessary Steps of the Sequential Evaluation Process?**

Mr. Fuqua contends that the ALJ did not properly consider all of his medically determinable impairments beyond the second step of the sequential evaluation process when determining his RFC. (Doc. 10 at 5). He also states that "[i]n his decision, the ALJ specifically concluded that Plaintiff did not have back pain/arthritis and that this was, therefore, a non-severe impairment." (*Id.*) Mr. Fuqua is correct in his assertion that the ALJ determined that his back pain/arthritis, costochondritis, and obesity were non-severe impairments. However, the ALJ did not determine that Mr. Fuqua "did not have" these impairments. The ALJ's decision acknowledges that Mr. Fuqua "has . . . been diagnosed with, treated for or given a history of obesity, costochondritis, and back pain/arthritis." (Tr. at 25). However, the ALJ also determined that "these [impairments] have not resulted in any lasting limitation of his ability for basic work-related activities," and, accordingly, found that the impairments are not severe. (*Id.*)

In making his determination that Mr. Fuqua's obesity, costochondritis, and back pain/arthritis are not severe impairments, the ALJ cited Mr. Fuqua's testimony that his excess weight did not cause any problems or limitations, the fact that Mr. Fuqua has sought treatment for his back pain and arthritis only rarely, and that

Mr. Fuqua has repeatedly had normal musculoskeletal and neurological examinations during the time period at issue.  (Tr. at 25).  At step three, the ALJ determined that Mr. Fuqua's "impairments do not meet or equal the severity of any impairment in the Listing of Impairments."  (*Id*.)  The ALJ determined Mr. Fuqua's RFC before proceeding to step four of the sequential evaluation process (*id*.), and he clearly did so by taking into account not only Mr. Fuqua's hypertension, but also his back pain/arthritis and his obesity.  (Tr. at 27).  It simply is not true that the ALJ failed to consider separately and in combination all of the Mr. Fuqua's impairments, even those found to be "non-severe."  At pages six and seven of the ALJ's opinion (Tr. at 27-28), he explicitly explained why he concluded that Mr. Fuqua's back pain/arthritis and obesity did not have any effect on his RFC or ability to work.  These findings were based on substantial evidence, consisting both of medical records and Mr. Fuqua's testimony.  The ALJ ultimately determined that Mr. Fuqua's RFC allows him to perform his past relevant work.  (Tr. at 31).

Therefore, Mr. Fuqua's argument that the ALJ failed to consider his non-severe impairments past step two of the sequential evaluation process is simply invalid.  In the ALJ's determination of Mr. Fuqua's RFC, he took into consideration Mr. Fuqua's allegations "that his ability to work is impaired by high blood pressure and arthritis in his hands, knees, and back," and his testimony that "he has constant

pain in his lower back" that "makes it difficult to walk and affects his balance" and his ability to bend, use his hands, and lift. (Tr. at 26). However, the ALJ then determined that Mr. Fuqua's testimony regarding the persistence and intensity of his symptoms was "not credible" to the extent that it is inconsistent with the determined RFC and the medical evidence. (Tr. at 27).

The ALJ provides a detailed discussion of the medical and non-medical evidence he used to determine RFC and the weight to which he gave each piece of evidence. (Tr. at 28-31). His assessment and reasoning meet the guidelines set forth in SSR 96-8p, which requires that the RFC assessment be based on all relevant, available evidence, including medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, evidence from attempts to work, need for a structured living environment, and work evaluations. Although the ALJ does not specifically mention Mr. Fuqua's alleged back pain and arthritis in the section of his opinion titled "Basis for the Residual Functional Capacity," this omission is explained by the ALJ's statement that "the medical evidence does not support the claimant's assertions regarding the limiting nature of his symptoms. In particular, there is very little medical evidence regarding the claimant's back pain/arthritis, and there are no treatment notes

indicating that he has significant problems with his hands or knees, as he contends." (Tr. at 27). The ALJ explicitly rejected all hypothetical limitations proposed by Mr. Fuqua and his representative as not supported by the longitudinal record. (Tr. at 30). Despite Mr. Fuqua's argument, the ALJ did consider his non-severe impairments beyond step two of the sequential evaluation process; the ALJ simply determined that the non-severe impairments do not effect Mr. Fuqua's ability to work. A review of the ALJ's RFC determination indicates to the court that the ALJ did consider Mr. Fuqua's medical condition as a whole in making his RFC determination. *Castel v. Commissioner of Social Security*, 355 Fed. Appx. 260, 263 (11th Cir. 2009).

### B.    Did the ALJ Properly Consider Mr. Fuqua's Impairments in Combination?

Mr. Fuqua argues that "each of his impairments should have been considered in combination with each other" in the ALJ's determination of his RFC. (Doc. 10, p. 7). He further contends that the ALJ failed to consider his impairments in combination beyond the question of whether those impairments meet a medical listing. (*Id*.) Finally, Mr. Fuqua claims that the ALJ failed to consider his diagnosed arthritis of the back and obesity at all. (*Id*.) The ALJ stated that, in making his RFC determination, he "considered all symptoms and the extent to

which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p."  (Tr. at 25).  The ALJ's evaluation included acknowledgment that Mr. Fuqua claims that "his ability to work is impaired by . . . arthritis in his hands, knees, and back," and that "he has constant pain in his lower back . . . [which] makes it difficult to walk and affects his balance."  (Tr. at 26).  The ALJ found that these allegations were not credible, however, due to the lack of medical evidence regarding back pain or arthritis, including the fact that "the medical records do not indicate that the claimant has required any regular medication for pain or other musculoskeletal complaints during the time at issue." (Tr. at 27).

In his determination of Mr. Fuqua's severe and non-severe impairments, the ALJ cites Mr. Fuqua's own testimony that "his excess weight does not cause him any problems or limitations," in classifying Mr. Fuqua's obesity as a non-severe impairment.  (Tr. at 23).  He notes Mr. Fuqua's past treatment of costochondritis[2] but, due to the fact that no lasting limitations resulted from that diagnosis and treatment, the ALJ found that the costochondritis also is a non-severe impairment.

---

[2]   Costochondritis is a temporary "inflammation of the cartilage that connects a rib to the breastbone (sternum)…," the pain from which "may mimic that of a heart attack or other heart conditions."  www.mayoclinic.org/diseases-conditions/costochondritis/basics/definition/con-2

(Tr. at 23).  The ALJ also cited Mr. Fuqua's continued collection of unemployment benefits, his self-reported daily activities, and his function report as evidence that Mr. Fuqua's allegations of disability are not totally credible.  (Tr. at 27).  The ALJ went on to explain that he determined Mr. Fuqua's RFC based on his "statements regarding the effects of his hypertension, including chest pain and shortness of breath," and, due to these symptoms, "limited him to medium work with . . . additional limitations . . . [including] walking at a normal pace to prevent blood pressure increases due to exertion . . . [and] postural and environmental restrictions to account for the claimant's dizziness and related symptoms."  (Tr. at 28).

Mr. Fuqua's brief correctly alleges that the ALJ does not mention his obesity or costochondritis specifically when determining his RFC.  Also, the ALJ did not specifically mention a hypothetical claimant with back pain, obesity, and costochondritis when posing hypotheticals to the Vocational Expert during Mr. Fuqua's hearing.  (Tr. at 85-87).  However, if the failure to specifically mention these non-severe impairments was error on the part of the ALJ, this court finds that such error was harmless, and the ALJ's findings are supported by substantial evidence.  In this jurisdiction, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district

court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted).  A review of the ALJ's RFC determination persuades the court that the ALJ did consider Mr. Fuqua's medical condition as a whole.  The ALJ's consideration of the evidence was not an arbitrary and broad dismissal.  After considering the entire record, the ALJ determined that Mr. Fuqua has the residual functioning capacity to perform medium work with several limitations.  Because Mr. Fuqua's past relevant work does not require him to perform work-activity limited by his RFC, the ALJ determined that Mr. Fuqua is capable of performing his past relevant work and, accordingly, is not disabled.  (Tr. at 22.)  This conclusion was grounded in the testimony of the vocational expert, who opined that a claimant with Mr. Fuqua's age, weight, and RFC could perform the work of a hand packager, as Mr. Fuqua had done in the past.


IV.     Conclusion

Upon review of the administrative record, and considering all of Mr. Fuqua's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

DONE this 19th day of March, 2014.


T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE